GARRETT SAVINGS LOAN AND TRUST COMPANY *v.*
SANDERS ET UX.

[No. 13,847.   Filed March 14, 1930.]

*Edgar W. Atkinson* and *Oak Husselman,* for appellant.
*Stump & McClintock,* for appellees.

NEAL, P. J.—On November 18, 1923, appellees executed their joint and several note to appellant, in the principal sum of $400, due three years after date, and to secure the note executed a mortgage on lot 7, block 9, Thomas South Addition to the city of Garrett. The note became due and was unpaid. Appellant then commenced this action to recover a personal judgment on the promissory note so executed by appellees and to foreclose the mortgage. The appellees answered the complaint in three paragraphs: (1) General denial; (2) payment of the note; (3) release and discharge of all liability.

The material allegations of the third paragraph may be summarized as follows: That on July 26, 1926, and ever since, the Garrett Home Building Company was a corporation with its principal place of business located in the city of Garrett; that the Garrett Home Building Company was operated and conducted in connection with the business of the Garrett Savings Loan and Trust Company; that both companies were managed and operated by Monte L. Green, who was an officer in each of the above-named corporations; that on July 26, 1926, appellees entered into an agreement with Monte L. Green, who was then acting for and on behalf of both companies, whereby appellees agreed to convey the real estate described in the mortgage to the Garrett Home Building Company in consideration for which the Garrett Home Building Company agreed to assume and pay the note and mortgage so executed by appellees and certain other liens and incumbrances then existing against the real estate, and the appellant agreed that if appellees "would so execute a deed of conveyance for said real estate, the defendants (appellees) would be released and

discharged from all further liability on said note and mortgage"; that, pursuant to the agreement, appellees did execute a warranty deed of conveyance for the real estate, conveying the same to the Garrett Home Building Company and delivering the deed to appellant, which deed was accepted pursuant to the agreement; that the deed was prepared by Monte L. Green, as managing official of both the Garrett Home Building Company, and appellant; that the deed contained the following clause: "That grantee assumes and agrees to pay the 1926 taxes due and payable in 1927, and any and all liens, incumbrances, assessments or impositions levied against said real estate including a mortgage in the sum of $400, in favor of the Garrett Savings Loan and Trust Company, and interest on the mortgage from November 15, 1926; that, by reason of the premises, the Garrett Home Building Company is the owner in fee simple of the real estate, and is also the obligor on the note and mortgage, and that, by reason of the premises, the defendants [appellees] are released and discharged from all liability on the said note and mortgage."

A reply in general denial to the third paragraph of answer closed the issues. The court found for appellees and rendered judgment accordingly. Motion for new trial was overruled, exceptions given, and appeal perfected. The error assigned is that the court erred in overruling appellant's motion for a new trial, and the specific causes presented are: (1) The finding of the court is not sustained by sufficient evidence; (2) the finding is contrary to law.

A resume of the evidence favorable to appellee is as follows: That the appellees did execute the note and mortgage in the manner and form as heretofore set forth in this opinion; that the note was due and unpaid; that in July, 1926, appellee J. A. Sanders had a conversation with one Monte L. Green, at the bank—the Garrett Sav-

ings Loan and Trust Company—that the purport of the conversation was to the effect that appellees did not want to be bothered with the property; that they (appellees) would deed the property to Green provided Green would assume the mortgage and balance due on the pavement and water taps due VanFleet and release (appellees) from the note and mortgage; and that Green advised appellee J. A. Sanders that he would take the matter under advisement; that a few days subsequent to the conversation, appellee J. A. Sanders received through the mail a warranty deed prepared by Green, which deed was to the effect that appellees conveyed to Garrett Home Building Company lot 7, in block 9, Thomas South Addition to the city of Garrett, and that the grantee assumed and agreed to pay the 1926 taxes, due and payable in 1927, all liens, incumbrances, assessments or impositions, levied against the real estate, including a mortgage in the sum of $400, in favor of the Garrett Savings Loan and Trust Company, and the interest on the same, from November 15, 1926; that appellees signed the deed and acknowledged the same before one Dale Green, an employee of the insurance department conducted by appellant; that the deed, in the latter part of July, 1926, was mailed to Green; that in the month of November, appellees received the deed, accompanied by a letter from Green. The letter informed appellee Sanders that the writer, Green, was inclosing a statement of appellee's account and returning the deed, and that he would confer with Sanders next week. The Garrett Savings and Trust Company was a bank, and Monte L. Green was the president; he was also one of the officers, secretary, of the Garrett Home Building Company, although not a director of the Garrett Home Building Company; that the directors of the Garrett Home Building Company met in the directors' room of appellant, the Garrett Savings Loan and Trust Company; that

Monte L. Green was active in the business affairs of each corporation; that prior to July 26, 1926, appellee J. A. Sanders had several business transactions with the Garrett Home Building Company; that appellee had sold at public auction several lots; that the purchasers of the real estate had executed their several contracts evidencing the purchase price; that these contracts were purchased by the Garrett Home Building Company through Monte L. Green, and, in order that the Garrett Home Building Company could perform the conditions of the contracts when the consideration had been discharged by the several purchasers, the real estate had been deeded to the Garrett Home Building Company by appellees; and that lot 7, being the same real estate described in the mortgage and deed heretofore mentioned, was sold at public auction at the time of the sale of the other lots, but the purchaser was unable to consummate the sale.

The evidence on behalf of appellant was of the following tenor: That Monte L. Green at no time agreed for and on behalf of the appellant that it would release the appellees of their personal liability on the notes so executed by them; that the note was never surrendered nor marked paid; that the directors of the Garrett Home Building Company refused to accept the deed unless the appellees would pay a certain sum owing to one of its directors; and that appellees refused to comply with the stipulation, and the deed was returned.

Appellees challenge the sufficiency of appellant's brief to present the error assigned, to wit: The overruling of the motion for a new trial, and the two causes thereunder, as above mentioned in this opinion. An examination of appellant's brief discloses that the motion for a new trial and the two causes are copied therein in full; that the several points and authorities are directed to the specification that the finding of the court was not

sustained by sufficient evidence, and therefore was contrary to law. A good-faith effort has been made by appellants to present the error assigned, and we are not desirous, by reason of refined technical objections, to refuse to consider the question presented.

Appellees say, in support of the judgment of the trial court: "That it appears from the evidence that the Garrett Home Building Company was a mere subsidiary of the appellant, with its office in the appellant bank, and both being under the direct management of Monte L. Green, who was secretary of the Garrett Home Building Company and president of the bank"; that "the appellant's mortgage became merged in the superior title which it acquired through the deed of appellees."

The evidence is not susceptible of a construction that the relationship between the two corporations is of such a character that a conveyance of the legal title to the real estate in question to the Garrett Home Building Company is of the same legal effect as a conveyance to appellant. There is no evidence that the directors of the Garrett Savings Loan and Trust Company, or even a majority of them, are the directors of the Garrett Home Building Company; no evidence that the stockholders of each corporation are the same, or that the majority of the stock in each corporation is owned by the same stockholders; no evidence that appellant, by or through an arrangement, whether lawful or otherwise, owns or controls a majority or any of the stock of the Garrett Home Building Company. To say that because Monte L. Green was the president of appellant and secretary of the Garrett Home Building Company, active in the management of each corporation, coupled with the fact that the directors of the Garrett Home Building Company met in the directors' room of appellant Trust Company, *ipso facto* constituted these two corporations

one legal entity, has no support in any text book or reported case.

Appellees, by their several propositions, say: That an agreement was entered into between Green and appellees whereby appellees were to be discharged from any further liability on the note and mortgage if appellees would execute a deed to appellant for the mortgaged property; that, pursuant to the agreement, Green drafted the deed, but, instead of making appellant the grantee as was agreed upon, Green wrote in the name of the Garrett Home Building Company as the grantee; that the deed was executed by appellees, delivered to appellant and accepted by it, and appellant has since been in the possession of the property, and received the rents and profits therefrom. As we view the evidence, no reasonable inferences can be drawn therefrom in conformity with appellee's view. Appellee J. A. Sanders, on direct examination, said: "I asked Mr. Green about Mrs. Sanders and myself deeding this property over to Mr. Green, and him assuming the balance due on the pavement and the water taps due VanFleet that he put in at the time that they put the pavement through, and Mr. Green said he would take it under advisement and I would hear from him. A few days—three or four days after that—he mailed the deed over." No objection was made to the above testimony. It will be observed, however, that at no place did Sanders refer to appellant bank. Certainly, it cannot be contended that the evidence of the appellee just quoted would sustain a reasonable inference that the grantee was to be the appellant, in the light of the solemn instrument signed and acknowledged by them wherein the terms and conditions of the conveyance were concisely and clearly set forth. *Phillbrook* v. *Emswiler* (1884), 92 Ind. 590; *Straub* v. *Terre Haute, etc., R. Co.* (1893), 135 Ind. 458, 35 N. E. 504; *Smith* v.

*McClain* (1896), 146 Ind. 77, 45 N. E. 41. Green was acting as the agent for the Garrett Home Building Company and not the appellant bank. In the light of the provisions of the deed, the Garrett Home Building Company became, as between it and the appellees, the principal debtor. The promissory note was not surrendered or paid. The evidence is insufficient to establish the fact as contended for by appellee that the appellant bank agreed to release the appellees from all liability on the note.

Judgment reversed, with instructions to sustain appellant's motion for new trial.

Nichols, J., dissents.

### DISSENTING OPINION.

NICHOLS, J.—I do not agree with the majority opinion that there is no evidence to support the decision of the trial court, and I therefore dissent. Let us keep in mind that we are not to weigh the evidence, but only to determine whether there is any evidence, or inference therefrom, to support the court's decision.

Monte L. Green was the president of appellant trust company, and had been such president for some time theretofore. Appellee had been a depositor in appellant trust company, and as such had transacted his business with such bank through Green, its president. Green was also secretary-treasurer of the Garrett Home Building Company. When appellee did business with Green, it is clear that he understood that he was transacting business with the institutions which he was directing, as president of the one, and secretary-treasurer of the other. Appellee testified that he always considered the Garrett Home Building Company as part of the trust company, because Green had full sway with all their

affairs. His testimony is fully corroborated by the fact that the building company had no place of business other than appellant's place of business, in the directors' room in which Green, as its secretary-treasurer, kept his files. After evasive answers to a number of questions as to where the board of directors of the building company met, he answered: "Generally upon my invitation, in the directors' room, not in the bank," and then testified that they met only once a year. It should need no argument to convince the court that Green was in full sway in the management of both companies, for a board of directors that meets but once a year can have little to do with the management of its company's business.

When appellees, in July, 1926, talked with Green in the bank, with the bank clerks present, about deeding the lot to him, on condition that *they* would release him from the note and mortgage, and pay the balance due on the pavement and water taps, the court was fully justified in inferring that appellees understood that *"they"* meant appellant trust company and the Garrett Home Building Company, and that appellees were dealing with both companies. Thereafter, without further conversation with appellees, appellant's president, Green, prepared a deed with Garrett Home Building Company, of which he was secretary-treasurer, as grantee, and mailed it to appellees in a Garrett Savings Loan and Trust Company envelope. Appellee, Jesse Sanders, testified that he did not know whether Green was secretary, or whether just president of the bank, but that he had been conducting business in real estate in that way. In answer to the question, "You had no dealings with the loan and trust company whatever in connection with this transaction?" he answered: "What would you consider Mr. Green? He was president of the bank." And then, in answer to the question, "He was secretary of the building association, of which you had knowledge

at that time?" he answered: "The real estate business of the trust company was done in that way."

In *Heim* v. *First Nat. Bank of Humboldt* (1906), 76 Nebr. 831, 107 N. W. 1019, a party went to a banking house to make a time deposit, and being informed that four per cent interest was paid on time deposits, he deposited $1,600, and received a time check for $1,600, payable at the bank, signed by the president individually. There was nothing to show that the bank assumed any obligation for its repayment. But it was held that the depositor could recover from the bank in an action for money had and received.

In *Burnell* v. *San Francisco Savings Union* (1902), 136 Cal. 499, 69 Pac. 144, a debt to a bank was secured by a deed of trust which named an officer thereof as trustee. The latter generally attended to its loans, and, in the course of such business, received a check from a prospective purchaser of the property for more than the amount of the debt and signed a conveyance of the property to the parties. The transaction was had, the check was delivered to him across the counter and at the desk or window where such transactions were ordinarily had, and he was instructed to deduct the amount of the debt and to hold the balance on deposit for the debtor. He handed the check to a teller, and the money therefor was received by the bank. He was authorized to sign and indorse checks and to sign certificates of deposit in the absence of the cashier, and, in this case, he issued a certificate to the debtor's husband for the balance due her and afterwards paid the same to the husband's order. It was held that he was authorized to receive the deposit, and the bank was accordingly liable for the money received for the debtor, and which it had never paid to her.

These cases illustrate the principle that where a transaction is had in the place of business of a bank or trust

company, and across the counter and at the desk or window where such transactions are ordinarily had, and the party so dealing understood that he was dealing with such company, though the officer in charge transacted the business in his own name, the bank will be liable.

After the execution and acknowledgment of the deed, it was returned to Green, in July, 1926, and was kept in the trust company's place of business until November 8, 1926, four months, without any suggestion or indication that it was not accepted, and then, without any explanation for so doing, the deed was returned to appellees. It is true that Green testified at the trial that it was returned because appellees failed to pay an assessment in favor of one Van Fleet for putting in a water tap, but appellee testified that there was no agreement that he was to pay Van Fleet anything, that he fully explained to Green as to every claim that was to be assumed, including the Van Fleet claim, and that this claim was never mentioned to him by Green or anyone after the deed was executed and delivered to him, and that Green never at any time said that the acceptance of the deed was conditioned upon his paying the Van Fleet claim.

It is well settled that when a deed, duly executed and acknowledged, is delivered, the title passes to the grantee, and that it is not divested by a return of the deed to the grantor. *Connelly* v. *Doe* (1846), 8 Blackf. (Ind.) 320; *Dearmond* v. *Dearmond* (1858), 10 Ind. 191; *Somers* v. *Pumphrey* (1865), 24 Ind. 231; *Nye* v. *Lowry* (1882), 82 Ind. 316; *Bunz* v. *Cornelius* (1886), 19 Nebr. 107, 26 N. W. 621.

I surmise that, had appellees filed a cross-complaint, and, on proper motion, the building company had been made a party defendant to the action, and appellees had examined the officers of both companies under oath, and had made an examination of their records and files pertaining to their dealings with each other, their true

relations would have been more clearly disclosed; but, without this step, I am of the opinion that there is ample evidence to sustain the decision of the court, that a right result was reached, and that the judgment of the court should not be reversed.